IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LEIGH ANNE PETERSON, ) | |
| ) | Case No. 3:13-cv-1115 |
| Plaintiff, ) | Judge Aleta A. Trauger |
| ) | |
| v. ) | |
| ) | |
| SUMNER COUNTY, TENNESSEE, ) | |
| CLINT PARKER, officially and ) | |
| individually, and the UNIVERSITY ) | |
| OF TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Pending before the court is defendant Clint Parker's Motion to Dismiss (Docket No. 13), to which the plaintiff, Leigh Anne Peterson, has filed a Response in opposition (Docket No. 17). For the reasons discussed herein, the defendant's motion will be granted.

## BACKGROUND[1]

Peterson is a former employee of the defendants Sumner County, Tennessee (the "County") and the University of Tennessee ("UT"). Peterson worked as an administrative assistant in the County's Agricultural Extension Office, which is jointly operated by the County and UT, until her termination on September 6, 2013. The defendant, Parker, is an employee of UT. At all relevant times, Parker was the Agricultural Extension Services Director for Sumner County and served as Peterson's direct supervisor.

---

[1] Unless otherwise indicated, the facts have been drawn from the Amended Complaint and Exhibit A to Peterson's original Complaint. (Docket No. 20; Docket No. 1, Ex. A.)

1

On September 5, 2013, Peterson sent an email to six individuals who appear to be Parker's supervisors. (Docket No. 1, Ex. A.) The email was intended to "voice some long suppressed complaints over the management of the Sumner County Extension Office" and listed a number of grievances against Parker.

Among others, Peterson complained that:

(1) Parker had promised Peterson a job transfer to "senior secretary" upon another employee's retirement, but, when Peterson refused to take a pay cut, Parker hired another individual, Marci, to serve as his new secretary;

(2) Parker delegated "Civil Rights Reporting" for the office to Marci and Peterson, and subsequently instructed them to "just copy the numbers from last year and change them a little;"

(3) Parker was frequently absent from work without excuse;

(4) Parker "had three of the four 4-H Program Assistants" working too many hours;

(5) Parker stated that not all volunteers for the office needed to fill out an application form;

(6) Parker did not consider Peterson for a County 4-H Agent position, even though she desired to be considered for the role;

(7) Parker "messed up" Peterson's vacation hours; and

(8) Parker had his secretary "certify his time."

(Docket No. 1, Ex. A.) Peterson's email included an excerpt from UT's Code of Conduct and alleged that Parker "has no respect for himself, his employees or the University in the way that he manages this office." Peterson closed her email by noting that she "realize[d] that sending this will most likely have repercussions."

The next day, September 6, 2013, Parker fired Peterson. On October 8, 2013, Peterson filed the Complaint in this action, alleging that Parker, UT, and the County retaliated against her because of her email communication. Peterson alleges that, by sending her email, she was

engaging in constitutionally protected speech related to matters of public concern. Therefore, Peterson alleges that the defendants are liable for First Amendment retaliation because her subsequent termination was a violation of 42 U.S.C. § 1983.[2] (Docket No. 20.)

On November 20, 2013, Parker filed the pending Motion to Dismiss (Docket No. 13). Sumner County filed an answer to the Complaint on November 20, 2013 (Docket No. 15), and on December 30, 2013, Peterson filed an Amended Complaint with the court's permission (Docket Nos. 18-20). Parker renewed his Motion to Dismiss on January 13, 2014 (Docket No. 23).

## ANALYSIS

### I. Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

---

[2] Peterson further alleges that the County and UT violated the Tennessee Public Employee Political Freedom Act, T.C.A. §§ 8-50-602, *et seq.* ("PEPFA"), and the Tennessee Public Protection Act, T.C.A. § 50-1-304 ("TPPA").

3

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## II. <u>First Amendment Retaliation and Section 1983</u>

"The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also Keeling v. Coffee Cnty., Tenn.*, --- F. App'x ---, 2013 WL 4034415, at *3-4 (6th Cir. Aug. 8, 2013). A cause of action for First Amendment retaliation requires an employee to demonstrate three things: (1) that she engaged in constitutionally protected speech or conduct; (2) that an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by her protected conduct. *See Mills v. Williams*, 276 F. App'x 417, 418 (6th Cir. 2008) (citing *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)).

To demonstrate that she engaged in constitutionally protected speech, Peterson must "clear two initial hurdles." *Keeling*, 2013 WL 4034415, at *3. The Sixth Circuit has instructed that a public employee's speech is constitutionally protected only if (1) her speech touches on a

4

matter of public concern, and (2) the speech was uttered by the employee while speaking as a citizen, as opposed to as a public employee acting pursuant to her job responsibilities. *Id.*

### A. Matters of Public Concern

A matter of public concern is one that involves "'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Kiessel v. Oltersdorf*, 459 F. App'x 510, 513-14 (quoting *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (internal citations omitted)). Matters of public concern include speech that relates to "any matter of political, social, or other concern to the community." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). "For example, a letter reporting a local water treatment plant's violation of environmental regulations to a state agency addresses a matter of public concern." *Kiessel*, 459 F. App'x at 514. The Sixth Circuit has consistently held that "[i]nternal personnel disputes or complaints about an employer's performance are *not* such matters." *Albert v. Mitchell*, 42 F. App'x 691, 693 (6th Cir. 2002) (emphasis added); *Brandenburg*, 253 F.3d at 898.

### B. A Public Employee Speaking as a Citizen

It is settled that, "if a public employee speaks pursuant to her official duties, then she was not speaking as a citizen, and the First Amendment will 'not insulate [her] communications from employer discipline.'" *Keeling*, 2013 WL 4034415 at *4 (quoting *Garcetti*, 547 U.S. at 421). The Sixth Circuit has offered guidance for courts reviewing whether a public employee spoke as a citizen. Courts "must assess both the speech's 'content and context—including to whom the statement was made—to determine whether the plaintiff made the statement pursuant to her individual duties.'" *Id.* (quoting *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010)). Further, "when a public employee raises complaints or concerns up the

5

chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." *Fox*, 605 F.3d at 348. When considering a claim for retaliation made by a public employee, courts should examine "the impetus for the speech, the setting of the speech, the speech's audience, and its general subject matter," as well as whether the speech is "nothing more than a public employee complaint against a supervisor." *Keeling*, 2013 WL 4034415, at *4 (citing *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540 (6th Cir. 2012)).

### III. <u>Parker's Motion to Dismiss</u>[3]

The Amended Complaint alleges that Peterson's email was related to "job-related matters of public concern and conduct that she reasonably believed to be illegal and unethical," and, therefore, the email constitutes constitutionally protected speech. Upon review of the context and general content of Peterson's email, however, it is clear that the speech at issue is no more than "the quintessential employee beef: management acted incompetently." *See Haynes v. City of Circleville, Ohio*, 474 F.3d 347, 365 (6th Cir. 2007). In an attempt to defeat Parker's motion, Peterson argues that the court should focus on her allegations that Parker directed "that she [and Marci] criminally falsify the department's required civil rights reporting;" his "malfeasance in not being at work for hours at a time without explanation;" and "his and the department's failure to comply with department policies controlling pay practices and volunteer applications designed to protect the county and extension office." (Docket No. 17 at 7.) The court finds these allegations of concern; however, such bare allegations cannot transform Peterson's email—

---

[3] The Amended Complaint alleges that Parker is liable both in his individual and official capacities, but it fails to identify any claim that is asserted against Parker in his official capacity as a UT employee. Accordingly, the court considers any claim against Parker in his "official capacity" to be abandoned and limits its analysis to Peterson's claim against Parker as an individual.

which is predominately concerned with issues related to office management and her lack of professional success at the office—into constitutionally protected speech.

Moreover, even assuming *arguendo* that Peterson's complaints indeed rise to the level of "matters of public concern," the context and content of Peterson's email indicate that she engaged in the speech solely as a public employee and not as a private citizen.  As in *Keeling*, Peterson's speech "pertained to her employment" and was "made up the chain of command" to Parker's superiors.  2013 WL 4034415, at *4; *see also Fox*, 605 F.3d at 349 (holding that a school teacher's complaints to her supervisor about class size were not protected).  Accordingly, Peterson's speech is considered undertaken in the course of performing her job.  *Compare Burgess v. Paducah Transit Auth.*, 387 F. App'x 538, 545 (6th Cir. 2010) (affirming grant of summary judgment to employer on retaliation claim because plaintiffs made their communications at the workplace and directed them to management), and *Fox*, 605 F.3d at 349 (same), *with Scarbrough*, 470 F.3d at 256-57 (holding public employee's speech protected where her speech involved "content largely unrelated to government employment" and was directed to "a public audience, outside the workplace.").  Because Peterson's speech was primarily concerned with how Parker performed his job and how Parker's behavior affected Peterson, it is not protected by the First Amendment.  Finally, even if Peterson's email did inform Parker's superiors that Parker was engaging in behavior that could affect matters of public concern, Peterson's email does not constitute protected speech because its impetus appears to be solely rooted in Peterson's personal frustration with her employment and her supervisor.  *Burgess*, 387 F. App'x at 544 (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 546 (6th Cir. 2007)).

Even considering the Amended Complaint in the light most favorable to Peterson, she has failed to sufficiently allege that she was engaged in a constitutionally protected activity.[4] Accordingly, Peterson fails to state a plausible claim for First Amendment retaliation against Parker.

## CONCLUSION

For these reasons, Parker's Motion to Dismiss (Docket No. 13) is **GRANTED** and defendant Parker will be dismissed from the case.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

---

[4] Because the court has concluded that Peterson fails to state a claim for retaliation, it need not reach Parker's alternative argument that he is entitled to qualified immunity.